**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MICHAEL JAMAL WILLIAMS,**

                              **Plaintiff,**

          **-v-**                                                      **12-CV-1147S(Sr)**

**CORRECTIONAL OFFICER JOHN DOE and**
**CORRECTIONAL OFFICER GROVER,**

                              **Defendants.**

## DECISION AND ORDER

          Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

assignment of this case to the undersigned to conduct all further proceedings, including

the entry of final judgment.  Dkt. #17.


          Currently before the Court is defendants' motion for summary judgment.

Dkt. #25.  For the following reasons, the motion is denied.


## BACKGROUND

          Plaintiff commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983 and

the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging that while

in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), at the Collins Correctional Facility ("Collins"), Corrections

Officer (C.O."), Conway insulted him and tampered with his Suhoor food bag between

July 23 and July 27, 2012 and that on August 12, 2012, C.O. Grover demanded a urine sample while he was fasting for Ramadan and issued a misbehavior report when plaintiff was unable to comply, resulting in three months in the Special Housing Unit ("SHU").  Dkt. #1.

When it was determined that there was no corrections officer by the name of Conway employed at Collins, the Court  terminated C.O. Conway and substituted "John Doe, Correctional Officer,"  as a defendant until plaintiff could identify the proper party through discovery.  Dkt. #13.

Joshua Becker, Inmate Grievance Program ("IGP"), Supervisor at Collins, declares that plaintiff failed to file a grievance regarding his complaints against CO Grover.  Dkt. #28, ¶ 7.

Plaintiff declares that he argued during his disciplinary hearing that he was unable to produce a urine specimen because he was fasting for religious reasons and submits a copy of DOCCS Directive 4937, which provides that

> Inmates participating in an approved religious fast should not be required to provide a urine sample during fasting periods since consumption of water may be necessary. Sample requests should be scheduled during other periods of the day and normal urinalysis testing procedures should then apply, including offering water to those inmates unable to provide a urine sample.

Dkt. #38, ¶¶ 5 & 7 &  p.9.  Plaintiff declares that he exhausted his administrative remedies with respect to the disciplinary proceeding by appealing the disciplinary decision, noting that DOCCS Directive 4040.701.3(e)(2) provides, in pertinent part, that

"an individual decision or disposition resulting from a disciplinary proceeding . . . is not grievable."  Dkt. #28, p.7 & 20; Dkt. #38, ¶¶ 8 & 12.

## DISCUSSION AND ANALYSIS

**John Doe Defendant**

The Attorney General's Office argues that the cause of action initially commenced against CO Conway should be dismissed for lack of service of process. Dkt. #27, p.4.

In it's Decision and Order entered September 5, 2013, the Court granted plaintiff permission to seek, through discovery, the name of the corrections officer alleged to have tampered with his Suhoor food bag between July 23 and July 27, 2012. Dkt. #13.  However, Rule 26 disclosure was not provided with respect to this claim and this motion was filed before the deadline for completion of discovery.

In light of documentation submitted by plaintiff and the IGRC Supervisor establishing that plaintiff appealed a grievance regarding items missing from his Suhoor bag to the Central Office Review Committee (Dkt. #1, pp.9-11; Dkt. #28, p.22), the Court will defer its ruling on this claim until plaintiff has been afforded an opportunity to request, through discovery, any documentation regarding the investigation of his grievance. Should such documentation identify a corrections officer with personal involvement in the alleged tampering of the Suhoor bag, plaintiff may request leave of the Court to add any such corrections officer as a defendant herein and seek service of the complaint upon such defendant by the United States Marshal.

**Exhaustion of Administrative Remedies**

Defendant Grover argues that plaintiff failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  Dkt. #27, pp.5-10.

Plaintiff declares that  his complaints against CO Grover were non-grievable and that he exhausted his administrative remedies by pursuing the disciplinary appeal process.  Dkt. #38, ¶¶ 8, 12 & 14-15.

Defendant Grover argues that an appeal from a disciplinary hearing does not exhaust constitutional claims, even if the hearing is based on the same set of facts underlying the grievance.  Dkt. #40, ¶ 5.

The PLRA states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In *Porter v. Nussle*, the Supreme Court held that exhaustion of administrative remedies in 1997(e) cases is mandatory[1] and should be applied broadly.  534 U.S. 516, 524 (2002).  The Supreme Court reasoned that requiring inmates to follow the grievance process would ultimately

---

[1] Although mandatory, administrative exhaustion is an affirmative defense rather than a jurisdictional predicate.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

"reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims;

and for those cases that eventually come to court, the administrative record could

potentially clarify the legal issues.  *Id.* at 524-25.  "Even when the prisoner seeks relief

not available in grievance proceedings" – such as monetary damages – "exhaustion is a

prerequisite to suit."  *Id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 741 (2001).

Thus, the "PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."  *Id.* at 532.


The PLRA requires "proper exhaustion.  *Woodford v. Ngo*, 548 U.S. 81,

93 (2006).  In other words, prisoners must complete the administrative review process

in accordance with the  procedural rules set forth in the prison grievance process.

*Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012), *citing Jones v. Bock*, 549 U.S.

199, 218 (2007).  "[U]ntimely or otherwise procedurally defective attempts to secure

administrative remedies do not satisfy the PLRA's exhaustion requirement."  *Ruggerio*

*v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006), *quoting Woodford* 548 U.S. at

83-84.


The PLRA's exhaustion requirement may be excused when: (1)

administrative remedies are not available to the prisoner; (2) defendants have either

waived the defense of failure to exhaust or acted in such a way as to estop them from

raising the defense; or (3) special circumstances, such as a reasonable

misunderstanding of the grievance procedures, justify the prisoner's failure to comply

with the exhaustion requirement.  *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir. 2004).[2]  Special circumstances may exist where the prison grievance regulations are confusing and the prisoner relies upon a reasonable interpretation of those regulations.  *Id.* at 690; *See Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).  In *Giano*, for example, the Court of Appeals determined that plaintiff reasonably interpreted DOCCS Directive 4040, which sets forth the grievance process, to preclude the filing of a grievance on matters relating to disciplinary hearings, leaving appeal of his disciplinary conviction as his only administrative recourse.  *Id.* at 676.

In the instant case, as in *Giano*, the Court finds it reasonable for plaintiff to have believed that DOCCS Directive 4040 precluded the filing of a grievance with respect to issues which were integral to the disciplinary proceeding.  In light of plaintiff's declaration that his defense at the disciplinary hearing was based on his claim that demanding a urine sample while he was fasting was a violation of his religious freedom and that he appealed the disciplinary disposition, thereby affording DOCCS the opportunity to administratively assess the claims raised in this lawsuit, the Court finds special circumstances excusing plaintiff's failure to exhaust the administrative remedies available under the inmate grievance process.

---

[2] Although the Court of Appeals for the Second Circuit has questioned the continued viability of the doctrines of estoppel and special circumstances following *Woodford, See*, *e.g.*, *Amador v. Andres*, 655 F.3d 89, 102 (2d Cir. 2011), it has declined to resolve that question.

## **CONCLUSION**

For the reasons set forth above, defendants' motion for summary

judgment (Dkt. #25), is denied.


**SO ORDERED**.

**DATED:**      **Buffalo, New York**
               **April 8, 2015**

_s/ H. Kenneth Schroeder, Jr._
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**
