**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MICHAEL JAMAL WILLIAMS,**

                                        **Plaintiff,**

**v.**
                                                          **12-CV-1147(HKS)**

**JOHN DOE, et al.,**

                                        **Defendants.**

_____

**DECISION AND ORDER**

          Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. #17.


          Plaintiff Michael Jamal Williams ("plaintiff"), an inmate in the care and

custody of the New York State Department of Corrections and Community Supervision

("DOCCS"), filed this *pro se* action alleging violations of his religious freedom pursuant

to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"),

42 U.S.C. §§ 2000cc, *et seq.*, and the First Amendment Free Exercise Clause under

42 U.S.C. § 1983.  Dkt. #1.


          Plaintiff claims that while he was incarcerated at the Collins Correctional

Facility ("Collins"), Corrections Officer Michael Vanwey ("CO Vanwey") tampered with

his Suhoor food bag, removed food items used to break his fast, and harassed him.

Plaintiff also claims that Corrections Officer Kevin Grover ("CO Grover"), ordered him to

produce a urine sample for urinalysis testing while he was fasting for religious purposes, thereby denying him a religious accommodation.  Dkt. #1, pp. 5, 6.  Plaintiff seeks damages, as well as unspecified declaratory and injunctive relief.  *Id.* at 6.

Currently pending before this Court is the defendants' second motion for summary judgment.  Dkt. #55.

## **PROCEDURAL HISTORY**

On March 4, 2014, defendants moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies.  Dkt. #27.  This Court denied defendants' motion, deferring ruling on the first claim until discovery revealed which corrections officer was personally involved in the alleged tampering of the Suhoor bag, and finding that special circumstances existed to excuse plaintiff's failure to exhaust his administrative remedies with regard to the second claim.  Dkt. #42.

Defendants filed a second motion for summary judgment (Dkt. #55) on December 9, 2015, asserting that:  (1) plaintiff's request for injunctive relief is moot; (2) the RLUIPA claims are barred by the doctrine of sovereign immunity; (3) plaintiff failed to exhaust his administrative remedies with respect to CO Grover; (4) plaintiff's claims against COs Vanwey and Grover do not set forth constitutional violations; and (5) the defendants are entitled to qualified immunity.  Dkt. #55, pp. 4-14.

Plaintiff sought and received three extensions of time to file an opposition to the defendants' motion.  Dkt. Nos. 62, 64, 66.  On August 4, 2016, after Plaintiff failed to respond by the most recent deadline of June 15, 2016, this Court ordered plaintiff to show cause, in writing, no later than September 2, 2016, why this case should not be dismissed for failure to prosecute.  Dkt. #68.  The order further warned plaintiff that failure to comply would result in the dismissal of this action with prejudice pursuant to Fed. R. Civ. P.  41(b).  *Id.* at 4.  To date, plaintiff has failed to respond to this Court's order to show cause or to defendants' motion for summary judgment.[1]  Notwithstanding the repeated warnings to plaintiff regarding his failure to respond, and the Court's discretion to dismiss the case with prejudice under Rule 41(b) based on plaintiff's delinquencies, it will nonetheless review defendants' motion on the merits.  For the reasons that follow, the defendants' motion for summary judgment is granted.

## FACTUAL BACKGROUND

In support of their motion for summary judgment, defendants submit the affidavits of CO Vanwey and CO Grover with appended exhibits, a statement of undisputed facts, and a memorandum of law.  Dkt. Nos. 56-59.

At the time of the events alleged in the complaint, defendants CO Vanwey and CO Grover were corrections officers at Collins.

---

[1] Additionally, plaintiff was advised in defendants' motion papers of the consequences of failing to file and serve the requisite papers in opposition to summary judgment. See *Irby* notice, Dkt. #55, p. 2.

## Count I

   In a grievance dated August 1, 2012, plaintiff asserted that between July 23, and July 27, 2012, someone removed dried dates from his Suhoor bag and wrote the word "terrorist" on the outside of the bag.  Dkt. #57, Ex. A.  The grievance did not identify any particular corrections officer as the offender.  In response, the Inmate Grievance Review Committee ("IRGC") "advised [plaintiff] to bring any problems with the Suhoor Bag to the attention of the staff immediately so that any problems can be rectified."  *Id.*

   The Ramadan Suhoor menu for the dates in question contained a list of nine rotating items, including cereal, hard boiled eggs, bread, milk, peanut butter, jelly, fresh fruit, cheese, and sugar packets.[2]  Five dates were included in every Suhoor meal from July 23 to July 27.  *Id.*, Ex. B.

   Attendance records indicate that CO Vanwey worked from approximately 11:30am to 8:00pm on the dates in question and did not work at all on July 27, 2012.  *Id.*, Ex. C.

## Count II

   On August 12, 2012, CO Grover ordered plaintiff to provide a urine sample based on DOCCS' policy requiring a urinalysis where an inmate is suspected of illicit drug use. The procedure for urinalysis testing is set forth in DOCCS Directive 4937, which provides, among other things, that:

---

[2] Suhoor is the pre-dawn meal taken prior to fasting during the Islamic month of Ramadan.

> The inmate shall be escorted or shall report to the facility hospital clinic, or other appropriate area. DOCCS Directive 4937 § IV.C.1.
>
> If the inmate is unable to provide a urine specimen immediately, (s)he shall be detained until (s)he is able to provide a urine specimen. Drinking water should be available in an amount not to exceed eight ounces per hour. An inmate who is unable to provide a urine specimen within three hours  . . . shall be considered to be refusing to submit the specimen. § IV.D.4.
>
> If the inmate is unable within three hours of being ordered or if the inmate refuses to submit a urine specimen, this fact shall be noted . . . . § IV.D.5.

Dkt. #56, Ex. B.

A special procedure is provided for inmates claiming to be unable to urinate in the presence of others, a condition referred to as "shy bladder."  § IV.E. Likewise, a procedure is in place for a report for special accommodations.  § IV.F.

According to CO Grover, Plaintiff was offered an opportunity to provide a urine sample in his cell, but did not.  Dkt. #56, ¶ 6.  Plaintiff was then taken to a holding area where he was given three hours in which to provide a urine sample.  During that time, plaintiff accepted and voluntarily consumed three eight-ounce glasses of water, one per hour, without objection or mentioning his religious fast.  *Id.*, ¶ 7.  Plaintiff was advised of the consequences of failing to produce a urine sample.  *Id.*  Plaintiff did not provide a urine sample, and did not state a reason for his failure to do so.  He was then issued a misbehavior report for his non-compliance.  Dkt. #56, Ex. A.  Plaintiff testified at the resulting disciplinary hearing that he asked for special accommodations for shy

bladder, which was contradicted by CO Grover, another CO that was present, and the Request for Urinalysis Test form.  *Id.*  According to the witness testimony, Plaintiff did not assert a special accommodation on the basis of religious fasting.  He also did not assert religious fasting as a defense at the disciplinary hearing for his failure to produce the specimen.  *Id.*  Following the hearing, Plaintiff was found guilty and received three months in the special housing unit and six months loss of good time.  *Id.*

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

Local Rule 56(a)(1) requires a party moving for summary judgment to provide a short and concise statement, in numbered paragraphs, of the material facts that the moving party contends there is no genuine issue to be tried. Local R. Civ. P. 56(a)(1). Likewise, a party opposing summary judgment must provide a response to the moving party's statement of material facts, otherwise "[e]ach numbered paragraph in the

moving party's statement of material facts may be deemed admitted for purposes of the

motion unless it is specifically controverted by a correspondingly numbered paragraph

in the opposing statement."  Local R. Civ. P. 56(a)(2).  "Where the movant's papers give

the opposing party easily comprehensible notice of the possible consequences of not

responding to the motion, and the party does not respond, the court may consider as

undisputed the facts set forth in the moving party's affidavits."  *Gittens v. Garlocks

Sealing Techs.*, 19 F. Supp. 2d 104, 109 (W.D.N.Y. 1998).  Proceeding *pro se* does not

relieve a litigant from the usual requirements of summary judgment.  *See Wolfson v.

Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).

Because plaintiff has failed to respond to defendants' motion despite

ample notice and multiple opportunities to do so, the defendants' statement of facts is

deemed admitted.  *See Cassidy v. Nicolo*, No. 03-CV-6603, 2005 WL 3334523, *2

(W.D.N.Y. Dec. 7, 2005) (facts asserted by the defendants deemed admitted where the

plaintiff failed to file a response).

## **Section 1983**

Plaintiff brings his complaint under 42 U.S.C. § 1983, which provides a

civil claim for damages against "[e]very person who, under color of any statute . . . of

any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws."

42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a

procedure for redress for the deprivation of rights established elsewhere."  *Thomas v.*

*Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (internal citations omitted). To prevail on a

claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color

of state law deprived him of a federal right. *Id.*

**RLUIPA**

As an initial matter, plaintiff has sued the defendants in both their

individual and official capacities. Dkt. # 1.

The RLUIPA does not afford a plaintiff a cause of action for money

damages against individual defendants in either their official capacities, *Sossamon v.*

*Texas*, 131 S.Ct. 1651, 1663 (2011), or their individual capacities, *Washington v.*

*Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013). Accordingly, to the extent plaintiff seeks

monetary damages under RLUIPA, those claims are dismissed.

Plaintiff may seek injunctive relief against officials in their official

capacities.  *See Sossamon*, 131 S.Ct. at 1658 (holding that "a waiver of sovereign

immunity to other types of relief does not waive immunity to damages"); *see also Goode*

*v. Bruno*, No. 10 Civ. 1734, 2013 WL 5448442, at *7 (D.Conn. Sept. 30, 2013)

(permitting a RLUIPA claim for injunctive relief to continue past summary judgment).

Plaintiff's blanket request for an "injunction," however, is mooted by amendments to

DOCCS directives (Dkt. # 1).  *See Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014)

(stating that "DOC[C]S has amended Directive 4937 specifically to prohibit the conduct

of [prison officials ordering Muslim inmates to drink water during Ramadan fast], an act

meriting some deference") (citing *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d Cir. 1992) (dismissing as moot an appeal concerning a minority set-aside program after the state administratively suspended the program, in part, because "[s]ome deference must be accorded to a state's representations that certain conduct has been discontinued")).

What remains for the Court's consideration, therefore, is plaintiffs § 1983 claim for money damages premised upon the First Amendment Free Exercise Clause. The Court must now determine whether plaintiff has fulfilled the procedural prerequisites for obtaining relief under § 1983.

**Exhaustion Requirement**

The Prison Litigation Reform Act ("PLRA"), states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion of administrative remedies in 1997(e) cases is mandatory and should be applied broadly.  *Porter v. Nussle*, 534 U.S. 516 (2002).  The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.* at 532.

DOCCS employs a three-step Inmate Grievance Program that requires an inmate to:  (1) file a grievance with the IGRC as set forth in 7 N.Y.C.R.R. § 701.5(a); (2) appeal to the superintendent within four working days of receiving the IGRC's adverse written response as set forth in 7 N.Y.C.R.R. § 701.7(b); and (3) appeal to the Central Office Review Committee ("CORC"), in Albany, New York within four working days of receipt of the superintendent's adverse written response, as set forth in 7 N.Y.C.R.R. § 701.7(c)(1).  *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004).

Plaintiff has acknowledged that he failed to exhaust his administrative remedies by not following the inmate grievance process with respect to the second claim.[3]  Dkt. #59, ¶ 7.  Without the benefit of discovery, this Court accepted plaintiff's assertion of "special circumstances" that justified his "failure to comply with administrative procedural requirements."  *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004).[4]  Specifically, plaintiff claimed that he believed DOCCS Directive 4040 precluded the filing of a grievance with respect to issues which were integral to his disciplinary proceeding arising out of his refusal to provide a urine sample.  Dkt. #38, ¶ 12; Dkt. #42,

---

[3]  Plaintiff's first claim, though exhausted, warrants little discussion. Even crediting his version of events, he fails to articulate a constitutional violation arising out of the missing dates from his Suhoor food bag. "Courts have generally held that incidents that are isolated, or few in number, involving a denial of religiously-mandated food, do not give rise to a First Amendment claim." *Washington v. Afify*, 968 F. Supp. 2d 532, 538 (W.D.N.Y. 2013) (collecting cases); *see also*, *Phillips v. LaValley*, No. 12-CV-609, 2014 WL 1202693, at *7 (N.D.N.Y. Mar. 24, 2014) (holding that "[t]he denial of three kosher meals, on three separate occasions, did not constitute more than a *de minimus* burden," and collecting cases); *Leach v. NYC*, No. 12 CIV. 3809, 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013) (holding that "[t]he intermittent failure to provide incarcerated individuals with food complying with their religious dietary restrictions is a *de minimis* imposition falling far short of the substantial burden requirement").

[4] Courts are no longer permitted to consider whether special circumstances justify the prisoner's failure to comply with the administrative procedural requirements. *Ross v. Blake*, ___ U.S. ____, 136 S.Ct. 1850, 1856 (2016); *Williams v. Corr. Officer Priatno*, No. 14-4777, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) (recognizing that framework set forth in *Giano* and *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), has been abrogated in part by *Ross*).

p. 6.  This Court reached its determination based on plaintiff's declaration that his defense at the disciplinary hearing asserted that "the consumption of water required as part of urinalysis testing proceeding would cause [him] to break fast."  Dkt. # 38, ¶ 7. Plaintiff appealed the disciplinary decision, thereby affording DOCCS the opportunity to administratively address the claims raised here.  This Court accordingly found that those circumstances constituted special circumstances excusing his failure to exhaust by the proper channels.

The facts developed in discovery since the date of that Decision flatly contradict plaintiff's prior representation to this Court.  The administrative hearing transcript reveals that plaintiff only raised the defense of "shy bladder" syndrome, which was rejected by the hearing officer for plaintiff's failure to alert corrections officers of his purported condition at the time of the incident.  Dkt. # 56, Ex. A.  Contrary to plaintiff's previous declaration, he did not assert to the hearing officer that a urine sample while he was fasting violated his religious rights.  In light of the fact that a different set of circumstances was raised in the disciplinary hearing than is presented here, the prison administration cannot be said to have been afforded the "time and opportunity to address complaints internally before allowing the initiation of a federal case," as required by the PLRA.  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011).

Accordingly, the defendants have submitted evidence eliminating any triable issue of fact as to whether plaintiff failed to exhaust his administrative remedies

concerning religious accommodation, and they are therefore entitled to summary judgment as to plaintiff's First Amendment claim.

Because dismissal is warranted for plaintiff's failure to exhaust his administrative remedies, the Court need not reach defendants' remaining arguments.

Alternatively, plaintiff's case is subject to dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure, which provides, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, a dismissal under this subdivision . . . operates as an adjudication on the merits."  Fed. R. Civ. P. 41(b).  "[I]t is unquestioned that Rule 41(b) . . . gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute."  *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).

The Second Circuit has required district courts to afford *pro se* plaintiffs "special leniency regarding procedural matters" and "has repeatedly detailed factors . . . to be considered before dismissal for failure to comply with a court order."  *LeSane,* 239 F.3d at 209. Thus, a district court contemplating dismissing a plaintiff's case for failure to prosecute must consider:  (1) the duration of the plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether the district judge has taken care to strike the balance between alleviating court calendar congestion and

protecting a party's right to due process and a fair chance to be heard; and (5) whether the judge has adequately assessed the efficacy of lesser sanctions. *See Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009); *Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004); *LeSane*, 239 F.3d at 209.

Plaintiff has had no communication with the Court since April 11, 2016, when he sought a third extension of time to file a response to defendants' motion for summary judgment, which was granted. Dkt. Nos. 66, 67.  Although there is no indication that plaintiff did not receive the Court's order (Dkt. #42) granting his motion for additional time to file a response to the summary judgment motion, plaintiff failed to respond to the motion for summary judgment.  Given plaintiff's request for an extension of time to file a response to the motion for summary judgment, there can be no doubt that he was aware that his failure to respond to the motion for summary judgment could result in the grant of summary judgment in favor of the party seeking summary judgment and the dismissal of all or part of the case.[5]  As a result, the Court can only conclude that plaintiff has lost interest in prosecuting this action.

To hold this action in abeyance until plaintiff contacts the Court would undermine the Court's ability to manage its caseload and prejudice defendants' interest in resolving the allegations against them.  The Court is unaware of how a lesser

---

[5] As was noted in this Court's Order to Show Cause, defendants' notice of motion (Dkt.# 55) properly set forth the Notice to *Pro Se* Litigants Opposing Summary Judgment that the failure to timely respond to the motion may result in the Court accepting defendants' factual assertions as true and judgment may be entered in defendants' favor without a trial.

sanction would prompt plaintiff to comply, as multiple warnings that his failure to respond have not effectuated any communication from him.

## CONCLUSION

For the foregoing reasons, the Court grants the motion for summary judgment (Dkt. # 55) by defendants.

The Clerk of Court is directed to terminate the motion at Dkt. #55, and close the case.

**SO ORDERED.**

DATED:       Buffalo, New York
             September 14, 2016

_s/H. Kenneth Schroeder, Jr.___
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**